AFFIDAVIT

I, Matthew Shibley, being duly sworn, hereby depose and state as follows:

INTRODUCTION

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been employed as an ATF Special Agent since 2008 and am currently assigned to the Boston Group II Field Office. As an ATF Special Agent, my duties include the investigation of violations of laws related to firearms trafficking, firearm possession by prohibited persons, and the use of firearms in drug trafficking crimes. I am a graduate of the ATF National Academy and of the Federal Law Enforcement Training Center. During the course of my law enforcement career, I have written and/or participated in the execution of numerous state and federal search warrants for violations of firearms and narcotics laws.

2.      As a Special Agent, my duties include conducting criminal investigations into cases of illegal possession/transfer of firearms, firearms trafficking, and violent crimes involving firearms and narcotics trafficking. Through my training, knowledge, and experience, I have become familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the use and trafficking of controlled substances. I have been the affiant on numerous affidavits in support of federal search warrants and arrest warrants. I have participated in and performed surveillance and made arrests of firearm and narcotics traffickers who utilize their electronic devices to further their illegal activity. During the course of my professional experience, I have interviewed numerous defendants, witnesses, victims, confidential informants, and other police officers regarding the illegal trafficking of controlled substances as well as firearms.

BASIS AND PURPOSE OF AFFIDAVIT

3.      I submit this affidavit in support of an application for a criminal complaint charging KENNY ROMERO, a/k/a "KG," with possession with intent to distribute cocaine, in violation of Title 21, United States Code, Section 841(a)(1). This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary to establish probable cause to believe that the defendant has committed the violation set forth in the accompanying criminal complaint.

PROBABLE CAUSE

4.      On August 21, 2021, at approximately 5:00 p.m., two Boston Police officers, Nicholas Cubarney and Raymond Soto, wearing "Boston Police" tactical vests over plain clothes, driving an unmarked cruiser, were on routine patrol near the intersection of Dudley and Magazine Street in Roxbury, Massachusetts. The officers observed a black Toyota Camry, bearing Massachusetts registration 1LMN42, travel past them with what appeared to be excessively tinted windows, which is a potential violation of Massachusetts General Laws Chapter 90, § 9D. Officers made a U-turn and followed the Toyota Camry as it began to travel at a faster rate of speed, made a quick right hand turn onto Hampden Street, and then a quick left turn onto Eustis Street. The Toyota Camry came to a stop on the left-hand side of Eustis Street blocking the driveways of 235 and 231 Eustis Street. The officers activated their unmarked cruiser's lights and sirens and pulled in behind the car.

5.      Officer Cubarney walked up to the driver's side door and Officer Soto walked up to the passenger's side door. As the officers walked toward the car, they noted that they could not see who was inside the car or how many people were in the car because of the dark tint of the windows. The officers asked the individuals in the car to lower all of the windows. Once the

2

windows were lowered, the officers identified two people in the car, a driver and a front seat passenger, eventually identified as ROMERO. On January 14, 2020, ROMERO was convicted in United States District Court in Boston of unlicensed interstate transportation of a firearm, in violation of 18 U.S.C. § 922(a)(3). See United States v. Romero, Cr. No. 19-10330-GAO. ROMERO was sentenced to 21 months in prison and three years of supervised release. ROMERO remains on supervised release as of the date of this affidavit.

6.      The driver told Officer Cubarney that he did not have a driver's license and that he was only driving the car because his passenger (ROMERO) was too tired to drive and they had driven a long way. The driver then told the officers a different story, namely that he was just picked up and that "they" had just driven down the street.

7.      While the driver was speaking, the officers noted that ROMERO constantly moved around inside the passenger compartment. Several times, ROMERO touched the center console as if to open the console but did not. Each time the driver remarked how tired his passenger was, ROMERO stretched and yawned. The officers noted that ROMERO appeared to be extremely nervous and breathing rapidly throughout the encounter.

8.      Officer Cubarney searched the mobile data terminal in the cruiser and confirmed that the driver did not have a license to operate a motor vehicle. The officers returned to the cruiser and told the driver he would be arrested for driving without a license. Based on the changing narrative from the driver and the evident nervousness of the driver and ROMERO, the officers believed that the Toyota Camry could contain contraband. The officers removed ROMERO from the Toyota Camry. Once ROMERO was removed from the vehicle, the officers immediately observed a plastic bag containing approximately 22 grams of a white powdery substance where ROMERO had been sitting. A subsequent field test on the contents of the bag was positive for the

3

presence of cocaine. Based on my training and experience, 22 grams of cocaine is a quantity of cocaine which is consistent with an intent to distribute and inconsistent with personal use.

9.      Officers also seized two cellular telephones, a Black iPhone in a black case and a Silver iPhone S, from the passenger compartment of the Toyota. ROMERO advised the arresting officers that the phones belonged to him.

10.      On November 12, 2021, ATF agents obtained a search warrant to search ROMERO's cellular telephones. A review of the data extracted from the phones is ongoing. A preliminary review of the data from the phones shows that ROMERO was regularly involved in distributing cocaine and other controlled substances. For instance, data from ROMERO's phone includes a length exchange between ROMERO and a drug purchaser. On January 25, 2021, the drug purchaser texted ROMERO, "Can you come by here. I got 130." ROMERO responded, "Yeah, what did you want to grab," and the drug customer responded, "I got 130 for brown," which I know, based on my training and experience, is a common street term for heroin and/or a heroin-fentanyl mixture. On February 10, 2021, ROMERO's and the same drug customer had a lengthy exchange. ROMERO texted the drug purchaser, "Can't do 150 for 2 gs of the soft? It'll be cheaper instead of getting 1 for 100," and the customer responded, "OK." ROMERO replied, "300 is for the brown the soft is aside correct." Based on my training and experience, I know that "soft" is a common street term for cocaine. At 10:40 a.m., the drug customer directed ROMERO to a specific residence in Wakefield, Massachusetts and then texted ROMERO, "150 soft 300 on the other." At approximately 10:53 a.m., ROMERO replied, "Got you. 30 min." Three hours later, at approximately 1:30 p.m., ROMERO texted the drug customer to ask about the drugs: "Was good?" The drug customer responded, "It's okay. I mean I don't want to lie to you about it. It gets me off

4

e [sic]. The coke is great it just has a little too much cut." ROMERO concluded the exchange that

day by telling the customer, "I  actually do have some better stuff a lot less cut."

11.     ROMERO and the drug purchaser remained in regular contact. For instance, on

July 26, 2021, ROMERO texted the drug customer to inform him, "Doing basket deals today 220."

Based on my training and experience, I know that a "basket" is a common street term for 3.5 grams

of cocaine. The drug purchaser replied to ROMERO, "can you come by for 100," which I believe

was a request for ROMERO to deliver $100 worth of cocaine instead of the larger quantity offered.

ROMERO told the drug purchaser he had arrived at the purchaser's house: "Outside. Silver

Nissan." On August 10, 2021, ROMERO and the drug purchase exchanged similar messages to

complete a nearly-identical cocaine deal for $100.

12.     On August 21, 2021, at 2:40 p.m., ROMERO texted the drug purchaser, "Got some

new fire" with a fire emoji in the text message and told the customer, "Hit me up." At 5:00 p.m.,

less than two and a half hours after sending this text, Officers Cubarney and Soto pulled over the

Toyota Camry and seized the bag of cocaine from ROMERO.

CONCLUSION

13.     Based on quantity of cocaine seized and the text messages from his cellular telephone, I submit that there is probable cause to believe that on August 21, 2021, KENNY ROMERO, a/k/a "KG," possessed cocaine with the intent to distribute it, in violation of Title 21, United States Code, Section 841(a)(1).

I, Matthew Shibley, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

Matthew Shibley
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to and subscribed before me by telephone this 15th day of November 2021.

The Honorable Donald L. Cabell
United States Magistrate Judge

6