IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES of AMERICA,

    v.                                  Case 1:21-cr-10354 WGY

KENNY ROMERO,
        Defendant.

DEFENDANT'S SENTENCING MEMORANDUM

Preliminary

Defendant, Kenny Romero, by his counsel, Kevin L. Barron, Esq., respectfully submits this memorandum in aid of Mr. Romero's sentencing at ten o'clock on May 14, 2024. Defendant requests a variance on §3553(a) grounds and on his objections to the PSR to a sentence of 36 months from Probation's finding of a 63 - 78 month GSR (April 3, 2024, PSR ¶108) on TOL 24/CHC III.[1]

Accepting defendant's two April 19, 2024 Objections to PSR - correcting criminal history score for an in absentia marihuana possession conviction out of a state where marihuana is now legal and by excluding an unretrieved, unexamined firearm and reducing the number of guns from eight to seven - defendant believes that his criminal history score would fall by one point

---

[1] Accepting defendant's two April 19, 2024 Objections to PSR (correcting criminal history score for an in absentia marihuana conviction and reducing the number of guns from eight to seven), defendant believes that his criminal history score would fall by one point from CHC III to CHC II and his TOL would fall from 24 to 22, a reduction in GSR from 63 - 78 months to 46 to 57 months. Taking all 3553(a) factors into account, a sentence of 36 months complies with the SRA.

from CHC III to CHC II and his TOL would fall from 24 to 22, a reduction in GSR from 63 - 78 months to 46 - 57 months.

There are positive offender characteristics based on defendant's social and employment history that warrant a significant variance.

Taking all 3553(a) factors into account and viewing the conviction wholistically, a sentence of 36 months is not greater than necessary to serve the purposes of the Sentencing Reform Act.

Defendant will have served 25 months by the day of sentencing.

## FACTS

A.  Guidelines Issues

   1.  Application of Proper Adjusted Offense Level ("AOL") for RICO Count Affects Total Offense Level ("TOL") by One Level

A final PSR has yet to issue because the government and Probation disagree over the Base Offense Level for the RICO count, Count II of the Superseding Indictment and its effect on the "Multiple Count Adjustment" section of the PSR, paragraphs 45 - 48.[2] See, Offense Level Calculations, PSR ¶¶29 - 34, BOL and AOL at 19; RICO count at Superseding Indictment, Count II, Doc. 292.  The defendant agrees with Probation's position of an

---

[2] Probation and the government request a brief continuance in this respect and defendant assents.

AOL/BOL of 19 for the RICO count. Probation and the government calculate different Adjusted Offense Levels ("AOL") for the RICO count (Count II). Under its interpretation of the RICO Guideline and grouping rules, the government finds an AOL of 28 for the RICO count by applying an AOL of 28 and TOL of 25. Probation applies a BOL/AOL of 19 in its interpretation and determines TOL 24 (See, "Multiple Count Adjustment", PSR ¶¶45 - 48). The difference created by applying a higher RICO BOL adds only half a unit under §3D1.4 and results in one additional offense level from TOL 24 to 25. As noted, defendant calculates a TOL of 22 based on his objection to the inclusion of an eighth firearm and correction to CHC II.

B.   Defendant's Objections

    1.   Objection to Scoring of In Absentia Marihuana Possession Conviction at PSR ¶57.

Defendant objects to the scoring of a one-point 2016 Virginia conviction (PSR ¶57) in absentia for marihuana possession because marihuana possession is no longer a crime in Virginia and because the Virginia court has given Probation no records at all to determine whether this conviction is valid (e.g., proof of service of a summons). See, defendant's April 19, 2024 Objections to PSR. Subtracting this one point from Mr. Romero's criminal history score reduces his Criminal History Category from CHC III to CHC II and his GSR from 63 - 78 months

to 46 - 57 months.  See, PSR ¶60 - 63 for "Criminal History Computation".

    2.   Objection to Inclusion of Unretrieved Firearm
        In Defendant's AOL on the Firearms Count

Defendant has objected to the inclusion of an additional unretrieved, unexamined firearm that raises the total number of firearms for §2K2.1(b)(1) purposes from seven to eight and adds four offense levels to his TOL (firearms count leading count for grouping purposes).  See, Defendant's Objections, paragraph "2." to PSR ¶57.  The evidence at sentencing is simply insufficient to find on a preponderance that the object observed in defendant's waistband was a firearm.  The object was never removed from defendant's waistband during a controlled buy.  Given that replica firearms and realistic air guns are commonly carried by criminally-involved persons, it is impossible to determine without competent examination whether the object was likely designed or intended to be an actual firearm.  Deducting this four-level increase in offense level (PSR ¶57) to a two-level increase for the number of firearms alone would reduce defendant's Combined Adjusted Offense Level from 24 to 22 (after the drug counts become the highest AOL in the group), and his TOL after acceptance to 19, reducing GSR from 63 - 78 to 51 - 63 months, still accepting Probation's determination of CHC III.

Adjusting for defendant's determination of the correct offense level, his range would fall to 46 - 57 months.

C.   First to Plead

Mr. Romero, although he did not cooperate, was the first defendant to plead guilty.

ARGUMENT

A.   *Koon* Variance

A sentence of 36 months is sufficient but not greater than necessary to serve the purposes of the Sentencing Reform Act. Defendant seeks a combination departure[3] or variance.  29 years old, Mr. Romero's social history, his early guilty plea, a comparatively light criminal history, his emerging employment record and parental responsibilities for medically-imperiled infant son, all lean in favor of a *Koon*-type combination departure or variance.  These offender characteristics point to a defendant who is aging out of gang involvement and assuming his ordinary personal responsibilities.  Excess incarceration will not promote but inhibit defendant's rehabilitation.  With a claimed default statutory maximum of six and a half years,

---

[3] The Court will recall the *Koon* case from the era of fully determinative sentencing in which the Supreme Court held that a number factors, each in itself insufficient, could be sufficiently "extraordinary" in combination to take a case out of the "heartland" of cases and warrant departure. *Koon v. United States*, 518 U.S. 81 (1996) (criminal civil rights 18 USC §242 conviction of LAPD officer Stacey Koon involved in the high speed chase and police clubbing of Rodney King).

supervised release after a 36-month sentence is the better means of protecting the public.

B.   Overcoming Unfortunate Social History

The PSR describes a childhood of maternal abandonment[4], severe paternal physical abuse and material want.  These circumstances place defendant among the many children subject to harsh abuse who later have criminal involvement and join gangs.  As set forth in the PSR ¶¶ 72 & 73, defendant was left in his father's care when he was one year old until the age of eight.  The father was drug dealer.  The father and father's family were verbally and physically abusive.  The father even stabbed the young boy defendant while the father was in a drunken rage.  *Id.*  Another abusive episode damaged defendant's voice box to the extent that defendant needed speech therapy to recover.  *Id.*  Life with his mother in America was a substantial improvement, but still marred by employed poverty and frequent moves.  *Id.*

C.   Short Criminal History

Despite this heavy childhood burden, Mr. Romero's only criminal history (other than the possession of marihuana conviction in absentia) involves unscored convictions for

---

[4] This is not to suggest that defendant's mother willfully abandoned him in Honduras with his father.  Indeed, the mother's immigration to the United States was intended to eventually separate defendant from his father's life and from poverty in Honduras.  However, from the point of view of a child and to the argument developed here, defendant grew up in the trauma of parental abandonment.

driving without a license.  See, PSR ¶¶55 - 59.  While involvement in street gang racketeering can always be viewed as serious, this particular defendant does not appear to have lost his self-control.  Otherwise he would have a stronger convictions history.  Even where he committed this offense on release, the lack of heavier criminal involvement bodes well for future rehabilitation.

D. Education

Mr. Romero is a high school graduate with two years of confirmed enrollment at Bunker Hill Community College.  PSR ¶98. Mr. Romero has sought to improve his prospects with continuing education.  He enrolled in a school for commercial driver's license to become a long-haul trucker.  (See document, Ex. A.) His step father confirms this.  Unfortunately, Mr. Romero subjected himself to rearrest, was bailed, then reindicted and detained.  This prevented him from completing his coursework. Until detention in this case, Mr. Romero had completed classroom instruction and close maneuvering of a tractor trailer but needed two more hours for his road test.  Accordingly, Mr. Romero can complete his licensing when he reenrolls after release.

E. Building a Meaningful Employment History

has acted on his intention to find honest employment. He has a work history with entry-level jobs for temporary

employment agencies, restaurants and food delivery.  See, "Employment Record", PSR ¶¶101 - 103.  His step father confirms defendant's work through an employment agency installing solar panels, work at Domino's Pizza in Canton and Roslindale, Joe's American Bar & Grill in Boston, BJ's Wholesale in Woodbridge, Virginia and, most recently, as an internet delivery driver in this Division.  See partial pay records, Ex. B.

F.   Family Ties and Responsibilities

Mr. Romero has heavy if not "extraordinary" family responsibilities, a strong motivation to stay at work and out of jail.  He has a one year-old son by his girlfriend Arilyana "Lily" Villanfane, aged 23.  PSR ¶80.  Ms. Villafane writes the Court about defendant and about their son and her own difficult situation.  See email letter of Lily Villafane, undated, received by counsel November 20, 2023, Ex. C.  The baby had a stroke at birth, was hospitalized for his first month and, a year later, is still under intensive medical care.  Lily reports that Mr. Romero changed after his son's birth and began working long hours at regular jobs and internet delivery in addition to going to school for his CDL.  She essentially describes defendant as her only means of material and emotional support and explains her belief in defendant's reform.

While defendant's families ties and responsibilities would not have qualified under the pre-*Apprendi* departure regimen,

they are sufficient here to consider in this context with other factors. See, e.g., *United States v. Pereira*, 272 F.3d 76 (1st Cir. 2002) (limiting this departure to absolutely irreplaceable care giving only). The change in defendant motivated by his son's birth and ill natal health should be considered in light of other factors like his acceptance of responsibility as the first defendant to plead, his taking employment earnestly and the constant effort of overcoming an abusive early family life.

G.   Varying from CHC for Conviction on Legal Conduct

To the extent the Court does not agree with defendant's objection to scoring of the Virginia marihuana conviction in absentia and concomitant reduction to CHC II, it should nonetheless vary from GSR on the same grounds. The Court cannot fairly increase defendant's punishment for a conviction for possession of a useable amount of marihuana in a state that has amended its law to make possession of marihuana legal. Such a sentence would, almost by definition, be greater than necessary.

H.   Early Guilty Plea

The defense bears in mind how this Court does not penalize a defendant for going to trial with loss of acceptance of responsibility points. Defendant does not argue for extraordinary acceptance credit. Rather, defendant's decision to plead early is an undeniable sign of a rejection of his former life. Defendant has elected to "do his own time" but he

admits his criminal conduct early to avoid prolonging service of his sentence and to hasten his release for a new phase in life.

## CONCLUSION

For the reasons set forth above, the Court should sentence defendant to 36 months.

Dated: May 2, 2024

Respectfully submitted,
Kenny Romero, defendant,
By his counsel,
/s/Kevin L. Barron
Kevin L. Barron, Esq.
P.O. Box 290533
Charlestown, MA 02129
(617) 407-6837

## CERTIFICATE OF SERVICE

Counsel certifies that he has caused a true copy of this motion to be served today through the CM/ECF system of this District on the attorneys for all the parties as set forth in the Notice of Electronic Filing and that no party requires service by other means.

/s/Kevin L. Barron